**Law Offices of Liberty Edwards Lindstrom**
**Liberty Edwards Lindstrom (SBN 366851)**
**19800 MacArthur Blvd., Ste., 1000**
**Irvine, CA 92612**
**Telephone: 714-341-3032**
**Email: Lawbyliberty@gmail.com**

**Attorney for Plaintiff**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA RIVERSIDE DIVISION**

| | |
|---|---|
| Woodrow Russell, individually and on behalf of all others similarly situated,<br>Plaintiff<br><br>v.<br><br>NEXGRILL INDUSTRIES, INC, and DOES 1 through 100, inclusive,<br><br>Defendant | CASE NO.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Woodrow Russell ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendant, Nexgrill Industries Inc. ("Defendant") by his undersigned attorneys alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

## INTRODUCTION

1. This is a proposed class action brought on behalf of consumers of Defendant NEXGRILL INDUSTRIES INC. ("Defendant") Metal Wire Bristle Grill Brushes products that were designed, manufactured, marketed and sold by Defendant with a defect, and later subject to a delayed, deficient, and inadequate recall.

2. On March 26, 2026, Defendant announced a recall ("Recall"). The Recall included Defendant's metal wire bristle grill brushes with plastic or wood handles measuring between 18 and 21 inches long, including models 530-0024, 530-0024G, 530-0034, 530-0039, 530-0041 and 530-0042 ("Products")[1].

3. The stated reason for the recall was that small metal wire bristles can detach from the brushes, stick to the grill or food, posing an ingestion hazard and risk of serious internal injuries that could require surgery ("Defect").

4. Defendant was aware of the issues caused by metal wire bristles and continued to manufacture and sell the Products for years knowing that they contained the Defect.

5. Defendant delayed the Recall, when it should have announced it many years ago.

6. Furthermore, the Recall is inadequate. Defendant is offering a refund to be issued as a gift card. However, a gift card is not the same as a cash refund and does

[1] Nexgrill Recalls Over 10.2 Million Metal Wire Bristle Grill Brushes Due to Ingestion Hazard; Sold at Home Depot | CPSC.gov.

not fully compensate consumers for the premium price paid, or the time and burden required to participate in the Recall.

7. Consumers only have one option – stop using the recalled grill brushes, obtain a registration code, upload a photograph of the brush with the code and initials, wait for confirmation that registration has been processed, and then follow Defendant's directions to discard the recalled Product in order to receive a refund by gift card. Consumers did not bargain for a grill brush where the bristles could detach and injure them without notice.

8. Even more, Recall is burdensome, with Defendant only allowing participation for those who still possess the Product, and requiring those consumers to contact the Defendant, Defendant provide a registration code to the consumers, upload an image of the brush with the registration code and the consumers initials to the recall website to register for the recall. After registering, consumers would then receive a confirmation email stating that their registration has been successfully processed and finally consumers will then receive directions on how to discard the recalled grill brush.

9. By design, the recall received very little publication, with the result that the response rate has been low that allows them to say they are doing the right thing, when in fact the primary objective is to protect its bottom line.

10. Plaintiff therefore brings this action on behalf of himself and the class seeking compensation for all consumers who purchased the Products that were subject to the Recall and for the other relief sought herein.

11. Plaintiff is filing this class action lawsuit to seek all available relief to consumers, to raise awareness that Defendant's Products are a hazard, and to "encourage companies to take greater care in avoiding the production [and sale] of hazardous products in the first place." *Kaupelis v. Harbor Freight Tools USA, Inc.*, 2019 WL 6998661 at *10 (C.D. Cal. Oct. 9, 2019) (quoting *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1115-16 (C.D. Cal. 2008)).

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) ("CAFA"). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, there is diversity of citizenship between at minimum Plaintiff and Defendant and there are over 100 class members.

13. The Products were sold at stores throughout the United States, including Home Depot and online at homedepot.com from 2015 through 2026 for between $5 and $15. Approximately 10.2 million Products were recalled[2].

---

[2] Nexgrill Recalls Over 10.2 Million Metal Wire Bristle Grill Brushes Due to Ingestion Hazard; Sold at Home Depot | CPSC.gov.

14. Given the number of units recalled, the $5,000,000 in controversy threshold is easily met.

15. This Court has personal jurisdiction over Defendant because Defendant maintains its principal business in Chino, California and conducts and transacts business throughout this District.

16. Venue is proper in this District because Defendant maintains its principal place of business in this District, is subject to personal jurisdiction in this District, and the corporate decisions, acts, and omissions challenged herein occurred in, were directed from, or emanated from this District.

## PARTIES

### PLAINTIFF

**17.** Plaintiff Woodrow Russell is a resident of Grant Pass, Oregon. Plaintiff purchased at least one of Defendant's Products. Plaintiff purchased one of the Long Handle Grill Brush (model number 530-0034) at a Home Depot in Grants Pass, Oregon on or about a date between 2019 and 2020.

**18.** Plaintiff used the Product to clean his grill, including when the grill was hot.

**19.** Plaintiff considered Defendant a reputable company with a strong reputation for producing high quality grill products and believed these Products would be no different.

20. Before purchasing the Product, Plaintiff reviewed the Product details, descriptions, specifications. Plaintiff understood this to mean that the Product was a reliable, durable, and safe to use as a grill brush. None of Defendant's materials disclosed the Defect. If the Product's labeling or packaging had disclosed the Defect, then Plaintiff would not have purchased the Product, or would not have purchased the Product on the same terms.

**21.** Defendant failed to disclose the Defect to Plaintiff prior to and at the time of purchase. Had Plaintiff known of the Defect, he would not have purchased the Product on the same terms or for the same price.

**22.** Plaintiff relied on Defendant's implied representations that the Product was safe for use.

**23.** When using the Product, Plaintiff experienced the Defect. Some of the bristles detached from the Product and Plaintiff stopped using the Product.

**24.** The Recall is ineffective as it provides the Plaintiff only a gift card refund and offers no replacement product comparable to the Product he purchased, it does not provide a cash monetary refund to Plaintiff but rather allows him to receive a gift card refund after complying with burdensome recall requirements that do not provide complete relief for the defective Product he purchased.

**DEFENDANT**

25. Defendant is a California corporation with a principal place of business in Chino, California.

26. Upon information and belief, Defendant or its subsidiaries were involved in the design, manufacturing, marketing, distribution and sale of the Products.

27. On information and belief, the Products were conceived, designed, prepared and/or approved by Defendant and were disseminated by Defendant and its agents from its headquarters, alleged herein.

28. On information and belief, in committing the wrongful acts alleged herein, Defendant, in connection with its subsidiaries, affiliates, and/or other related entities and their employees, planned, participated in and furthered a common scheme to induce members of the public to purchase the Products by means of false, misleading, deceptive and fraudulent representations, and Defendant participated in the making of such representations in that it disseminated those misrepresentations or caused them to be disseminated.

## COMMON FACTUAL ALLEGATIONS

29. Defendant is a manufacturer of various types of grills as well as grilling accessories intended to enhance the grilling experience and has been selling products to consumers for over 30 years.

30. In order to enable consumers to clean baked-on food, grease and debris from their grills, Defendant sells brushes that can be used to clean the grill before or after its use.

31. One of the types of brushes that Defendant sold is a metal wire bristle grill brush. These brushes can be used on hot or cold grills and are purportedly effective at cleaning off food, grease and debris.

32. However, these brushes suffer from a major flaw—the Defect. The metal bristles at the end of the brush can detach, stick to the grill or food, posing an ingestion hazard and risk of serious internal injuries that could require surgery.

33. Examples of the brushes from the Recall notice are pictured below:













34. Defendant has sold these brushes since at least 2015 and has continued selling them despite being aware of the Defect, including through complaints made to the CPSC about the Defect.

35. Numerous reports have come out over the past 5-10 years about the dangers of these brushes.

36. All of the omissions and misrepresentations at issue were uniformly and consistently made at all times while the Products were sold between 2015 through 2026.

37. Defendant represented the Products as grill cleaning brushed designed and intended to clean grills and to remove food, grease, and debris from cooking grates. Defendants sold the Products as grill accessories that consumer could use for their ordinary and intended purpose of cleaning grills.

38. Reasonable consumers understood this to mean that the Products were safe, reliable, and durable grill brushes that were safe to use on all grills, both hot and cold.

39. However, these Representations were false and misleading, because the Products were not safe, reliable, and durable.

40. For example, before Defendant began distributing the recalled Nexgrill Long Handle Grill Brush, model 530-0034, the CDC published a July 2012 Morbidity and Mortality Weekly Report addressing injuries arising from ingestion of wire

bristles from grill-cleaning brushes and warning that awareness among manufacturers and retailers could reduce exposure and future injuries[3].

41. On July 4, 2018, Consumer Reports published an article called "Guard Against Wire Grill Brush Dangers. Sharp bristles can get left behind after cleaning and stick to your food, posing a risk."[4]

42. Today published an article on May 24, 2024 titled "Using this popular grilling tool lands people in the ER every summer." [5]

43. Defendant is in a superior position to consumers regarding the Defect and reasonable consumers were entitled to rely, and did rely, on Defendant's representations and omissions regarding the utility and safety of the Products.

44. Upon information and belief, there was no adequate warning disclosing the Defect on the Products' labels, on the websites where the Products were sold, or on the Products themselves. The omission and misrepresentations pertain to an unreasonable safety hazard that reasonable consumers consider to be material.

45. Furthermore, Defendant acknowledged that it is aware of at least 68 reports and reviews where small wire bristles detached from the grill brushes,

---

[3] https://www.cdc.gov/mmwr/preview/mmwrhtml/mm6126a4.htm.

[4] https://www.consumerreports.org/food-safety/wire-grill-brush-danger/.

[5] https://www.today.com/health/pediatric-er-doctor-warns-danger-wire-grill-brushes-rcna84124.

including five reports of consumers who swallowed metal bristles and sought medical treatment to remove the bristles from their digestive tract or throat. [6]

46. Despite being aware of this fundamental Defect, or at minimum having reason to know the Defect, Defendant continued selling these Products reaping the profits from their sale while at the same time failing to disclose from consumers that these brushes contain a fundamental defect.

47. Upon information and belief, Defendant did not disclose the Defect on the product packaging or labeling or in any other customer-facing document or display. Retailers' sales personnel and customer service representatives also did not disclose the Defect.

48. At the time of purchase, Plaintiff and class members did not know and did not have reason to know that the Products were defective. Defendant, and its predecessor, had exclusive knowledge of that fact.

49. Due to Defendant's reputation as a company that creates high quality grilling products, consumers relied on Defendant's continued sale of these Products, believing them to be safe.

50. Defendant made partial representations to Plaintiff and class members, while suppressing the safety Defect. Specifically, Defendant marketed the Products

[6] Nexgrill Recalls Over 10.2 Million Metal Wire Bristle Grill Brushes Due to Ingestion Hazard; Sold at Home Depot | CPSC.gov

as safe, reliable, and durable, while knowing that those representations were not true and failing to disclose the Defect.

51. However, given Defendant's admissions in the Recall notice, which came far too late as Defendant has known about the Defect for years, it is clear that the Defect is dangerous, was known by Defendant for a while, and yet Defendant continued to deceive consumers by selling dangerous Products.

52. Defendant was aware of the defect at the time of sale. Indeed, it took numerous complaints regarding the Defect and injuries, before Defendant finally issued a recall.

53. Before the products were first launched, Defendant knew or should have known about the Defect based on publicly available information concerning wire bristle grill brush hazards, consumer complaints, and as a result of pre-release testing.

54. Upon information and belief, after launching the products, Defendant monitored a variety of sources of information to detect signs of defects. These sources of information include warranty claim data, customer complaints to Defendant, replacement part data, field reports, and CPSC correspondence.

55. Defendant knew that for every complaint made, there is a statistical likelihood that there were many more unreported incidents, and Defendant made projections about the likely manifestation rate and future warranty claims based on the number of known complaints.

56. The fact that so many consumers made similar complaints indicated that the complaints were not the result of user error or anomalous incidents, but instead a systemic problem with the Products. The reports and complaints from consumers were similar enough to put Defendant on notice that the incidents described were the result of a defect, and the Products were experiencing unusually high levels of complaints about the defect. And yet, Defendant waited until it had at least 68 reports of the defect, and at least five reports of injuries requiring medical intervention, before issuing its Recall.

## RULE 9(b) ALLEGATIONS

57. Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

58. WHO: Defendant made material misrepresentations and failed to adequately disclose material facts as detailed herein. Except as identified herein, Plaintiff is unaware, and therefore unable to identify, the true names and identities of those individuals at Defendant who are responsible for such material misrepresentations and omissions.

59. WHAT: Defendant made material misrepresentations regarding its Products. Specifically, Defendant represented to consumers, through the marketing and packaging of its Products, that the Products are safe and can be used as intended

without hazards. These representations are false and misleading because the Products are not safe and contain the Defect.

60. WHEN: Defendant made the material misrepresentations, omissions, and non-disclosures detailed herein continuously at every point of purchase throughout the Class Period.

61. WHERE: Defendant's material misrepresentations, omissions, and non-disclosures detailed herein were made, *inter alia*, on the labels and packaging of its Products.

62. WHY: Defendant engaged in the material misrepresentations, omissions, and non-disclosures detailed herein for the express purpose of inducing Plaintiff and other reasonable consumers to purchase its Products based on the belief that the Products are safe to use for grilling purposes. Defendant profited by selling its Products to hundreds of thousands of unsuspecting consumers.

## CLASS ALLEGATIONS

63. Plaintiff brings this action as a class action pursuant to Rule 23(a), (b)(2), (b)(3) and (c)(4) of the Federal Rules of Civil Procedure.

64. Plaintiff brings this action on behalf of the following consumers:

a. Nationwide Class:

During the fullest period allowed by law, all consumers who purchased at least one of the Products in the United States.

b. California Subclass:

During the fullest period allowed by law, all consumers who purchased at least one of the Products in California.

65. Excluded from the Class are Defendant's current or former officers, directors, and employees; counsel for Plaintiff and Defendant; and the judicial officer to whom this lawsuit is assigned.

66. Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise. Plaintiff also reserves the right to create additional subclasses.

67. The requirements of Federal Rule of Civil Procedure 23 are satisfied because:

a. Numerosity: The members of the Class are so numerous that joinder of all members is impracticable. Based on the Recall notice, which indicates that approximately 10.2 million Products were sold, Plaintiff estimates that the Class numbers are in the hundreds of thousands if not millions.

b. Commonality: There are questions of law and fact that are common to the Class members and that predominate over individual questions. These include the following:

i. Whether the Products contain the Defect alleged herein;

ii. Whether Defendant knew or should have known of the Defect;

iii. Whether Defendant had a duty to disclose the Defect to consumers;

iv. Whether Defendant failed to adequately warn Plaintiff and Class Members that the Products contained the Defect;

v. Whether Defendant's representations and omissions were misleading or deceptive;

vi. Whether Defendant omitted or failed to disclose material information to Plaintiff and Class Members regarding the Products;

vii. Whether Defendant concealed from and/or failed to disclose to Plaintiffs and Class Members that the Products contain the Defect;

viii. Whether Defendant's conduct as alleged violated the consumer protection statutes alleged herein;

ix. Whether Defendant's conduct was unfair or illegal;

x. Whether Plaintiff and Class Members suffered economic injury;

xi. Whether Defendant's conduct violates public policy; and

xii. Whether Defendant was unjustly enriched.

c. Typicality: Plaintiff's claims are typical of the claims of the Class Members because Plaintiff suffered the same injury as the Class Members by nature of their purchases of the Products.

d. Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the members of the class. Plaintiff does not have any interests that are adverse to those of the Class members. Plaintiff has retained competent counsel experienced in class action litigation who intends to prosecute this action vigorously and have the financial means of doing so.

e. Superiority: A class action is superior to other available methods for the efficient adjudication of this controversy. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Since the damages

suffered by individual Class members are relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged, while an important public interest will be served by addressing the matter as a class action.

68. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violations of California Unfair Competition Law ("UCL")**
**Cal. Bus & Prof. Code §§ 17200, *et seq.***
**(On Behalf of Plaintiff and the California Subclass)**

69. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

70. Plaintiff brings this cause of action individually and on behalf the California Subclass

71. California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising".

72. Defendant acted with knowledge and intent.

73. Plaintiff alleges a claim under all three prongs of the UCL.

74. As alleged above, Defendant engaged in fraudulent conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

75. Defendant's conduct also constitutes "unfair" business acts and practices within the meaning of the UCL, in that its conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Defendant's violation of consumer protection and unfair competition laws resulted in harm to consumers.

76. Plaintiff also alleges a violation under the "unlawful" prong of the UCL because Defendant's conduct violated consumer protection laws and the common law as set forth herein.

77. As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiff and the other members of the California Subclass have suffered out-of-pocket losses.

78. Plaintiff and Class Members have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.

79. Plaintiff seeks all relief available under the UCL.

**SECOND CAUSE OF ACTION**
**Violations of California's Consumer Legal Remedies Act ("CLRA") Cal. Civ. Code §§ 1750, et seq.**
**(On Behalf of Plaintiff and the California Subclass)**

80. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

81. Plaintiff brings this cause of action individually and on behalf of the California Subclass.

82. Defendant is a "person" as defined by California Civil Code § 1761(c).

83. Plaintiff and the other Class Members are "consumers" within the meaning of California Civil Code § 1761(d).

84. For the reasons alleged above, Defendant violated California Civil Code § 1770(a)(5)(7) and (9).

85. Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business.

86. Defendant acted with knowledge and intent.

87. Defendant engaged in conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

88. With respect to restitution under the CLRA claim, Plaintiff alleges in the alternative that he lacks an adequate remedy at law for the reasons already alleged above.

89. As a result of Defendant's misconduct, Plaintiff and other Class Members have suffered monetary harm.

90. Plaintiff seeks all relief available under this cause of action, except damages. Plaintiff may amend this claim at a later time to add a damages claim.

**THIRD CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Nationwide Class, or Alternatively, the California Subclass)**

91. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

92. This claim is brought in the alternative to the other Causes of Action on behalf of the Nationwide class or, alternatively, the California Subclass. The Federal Rules of Civil Procedure allow Plaintiff to plead alternative theories.

93. Defendant's conduct violated, *inter alia*, state, and federal law by manufacturing, advertising, labeling, marketing, distributing, and selling the Products while misrepresenting and omitting material facts, including by making representations alleged herein.

94. Defendant's unlawful conduct, including its representations and omissions, allowed it to knowingly realize substantial revenues from selling the Products at the expense of, and to the detriment or impoverishment of, Plaintiff and

Class Members and to Defendant's benefit and enrichment. Defendant has violated fundamental principles of justice, equity, and good conscience.

95. Plaintiff and Class members conferred significant financial benefits and paid substantial compensation to Defendant via retailers for the Products, which were not as Defendant represented them to be.

96. Defendant knowingly received and enjoyed the benefits conferred by Plaintiff and Class Members.

97. It is inequitable for Defendant to retain the benefits conferred by Plaintiff and Class Members' payments.

98. Plaintiff and Class Members seek to establish a constructive trust from which Plaintiff and Class Members may seek restitution.

## FOURTH CAUSE OF ACTION
## FRAUD
**(On Behalf of Plaintiff and the Nationwide Class or, Alternatively, the California Subclass)**

99. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

100. This claim is brought on behalf of the Nationwide class or, alternatively, the California Subclass.

101. Defendant's conduct was fraudulent because it had the effect of deceiving consumers into believing its marketing of the Products as safe when in fact the Products contain the Defect.

102. Defendant knowingly, willfully, fraudulently, and/or recklessly concealed and suppressed material facts regarding the Products.

103. As detailed above, Defendant made false or misleading statements to Plaintiff and Class Members regarding the safety of the Products. These uniform and pervasive representations were made through Defendant's marketing of the Products as industry leaders in grilling products, labels and packaging materials, the websites of Defendant and its authorized retailers and other promotional materials for the Products.

104. Defendant's representations were false and misleading because the Products contain the Defect and because of the associated risks to consumers, including injury.

105. As described above, prior to and after distributing the Products into the consumer marketplace, Defendant knew that the Products contained the Defect and presented the associated risks to consumers. Nonetheless, Defendant, through its misrepresentations, misleading statements and omissions detailed herein, continued to sell the Products in the United States in order to increase its own profits and garner market share, while putting the lives of consumers at risk.

106. Defendant knew the representations were false and intended that Plaintiff and Class Members rely on them.

107. Defendant's conduct was further fraudulent because Defendant failed to disclose the Defect associated with the Products. Specifically, Defendant failed to adequately warn Plaintiff and Class Members that the Products contained the Defect, were not safe and could cause and had caused injury.

108. These misrepresentations and omissions were material to the decision of Plaintiff and Class Members to acquire the Products. Plaintiffs and members of the Class justifiably relied on Defendant's misrepresentations of material facts and omissions regarding the Products, as described above.

109. Defendant has a duty to disclose the truth regarding the safety of the Products because the safety of the Products has a direct impact on the health and safety of the consumers who utilize them. This duty arose from the fact that Defendant: (a) had exclusive and/or far superior knowledge and access to knowledge regarding the safety and durability of the Products; (b) affirmatively and intentionally concealed material facts from Plaintiff and Class Members; and (c) knew that the Products were not safe for their marketed and intended use.

110. The material facts Defendant represented and omitted to disclose were made to Plaintiff and members of the Class when they purchased the Products.

111. Defendant intended that its misrepresentations and omissions of material fact would deceive or mislead Plaintiff and members of the Class and induce them to purchase the Products.

112. Plaintiff and members of the Class justifiably relied on Defendant's misrepresentations and omissions of material facts regarding the Products.

113. Defendant's conduct showed malice, motive and a reckless disregard of the truth such that an award of punitive damages is appropriate.

114. Defendant's misrepresentations and omissions of material facts directly and proximately caused the damages suffered by Plaintiff and members of the Class.

115. As a result of Defendant's misrepresentations and omissions of material facts, Plaintiff and members of the Classes were damaged in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
## NEGLIGENCE
**(On Behalf of Plaintiff and the Nationwide Class or, Alternatively, the California Subclass)**

116. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

117. This claim is brought on behalf of the Nationwide class or, alternatively, the California Subclass.

118. Defendant directly or indirectly caused the Products to be sold, distributed, packaged, labeled, marketed, promoted and/or used by Plaintiff and the other Class Members.

119. At all times relevant, Defendant had a duty to exercise reasonable care in the design, testing, research, manufacture, marketing, advertisement, supply, promotion, packaging, sale and distribution of the Products, including the duty to take all reasonable steps necessary to manufacture, promote and/or sell a product that was not unreasonably dangerous to consumers and users of the Products.

120. Defendant's duty of care owed to consumers and the general public included providing accurate, true and correct information concerning the risks of using the Products and appropriate, complete and accurate warnings concerning the potential safety risks regarding the use of the Products, and, in particular, their uniform Defect.

121. Defendant knew, or otherwise should have known, that the Products posed serious safety risks to consumers, because of, among other things, their own internal testing, data and surveys, the Recall, various publications, and the multiple reports of injuries associated with the Defect.

122. Defendant also knew or, in the exercise of reasonable care should have known, that users and consumers of the Products were unaware of the Defect of the Products and the associated risks.

123. Defendant omitted, concealed and failed to disclose to consumers that the Products pose serious safety risks to consumers, including that the Products were inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; and contained a Defect.

124. Defendant was negligent in the following respects:

a. Manufacturing, producing, promoting, formulating, creating, developing, designing, selling and/or distributing the Products without thorough and adequate pre-and post-market testing;

b. Manufacturing, producing, promoting, formulating, creating, developing, designing, selling and/or distributing the Products while negligently and/or intentionally concealing and failing to disclose the results of trials and tests, and, consequently, the risk of serious injury associated with use of the Products;

c. Failing to use reasonable and prudent care in the design, research, manufacture and development of the Products to avoid the risk of serious harm to consumers associated with the prevalent use of the Products;

d. Failing to provide adequate instructions, guidelines and safety precautions to those consumers whom Defendant could reasonably foresee would use the Products;

e. Failing to disclose to Plaintiff, Class Members, users/consumers and the general public that use of the Products presented risks or serious injury to consumers;

f. Failing to warn Plaintiff and Class Members, consumers and the general public that the Products' risk of harm was unreasonable and that there were safer and effective alternative Products available to Plaintiff and other consumers;

g. Representing that its Products were safe for their intended use when, in fact, Defendant knew, or should have known, that the Products were not safe for their intended purpose;

h. Failing to timely or adequately make and/or submit any changes to the Products' labeling or other promotional materials that would alert the consumers and the general public of the risks of the Products and related Defect;

i. Advertising, marketing and recommending the use of the Products while concealing and failing to disclose or warn of the dangers known by Defendant to be associated with or caused by the use of the Products and/or Defect;

j. Continuing to disseminate information to its consumers, which indicates or implies that Defendant's Products are safe and suitable for their advertised and intended use;

k. Continuing the manufacture and sale of its Products with the knowledge that the Products were unreasonably unsafe and dangerous to consumers; and

l. Implementing the inadequate Recall.

125. Defendant knew, or otherwise should have known, that it was foreseeable that consumers, including Plaintiff and the other Class Members, would be placed at risk of serious injury as a result of Defendant's failure to exercise ordinary care in the manufacturing, marketing, promotion, labeling, distribution and sale of the Products.

126. Plaintiff and the other Class Members did not know the nature and extent of the injuries that could result from the intended use of the Products.

127. Defendant's negligence was the proximate cause of the injuries, harm and economic losses that Plaintiff and the other Class Members suffered, as described herein.

128. Defendant's failure to warn or instruct was a substantial factor in causing Plaintiff's and other Class Members' harm.

129. Defendant's conduct, as described above, was reckless. Defendant regularly risked the lives of consumers and users of the Products, including Plaintiff

and the other Class Members, with full knowledge of the dangers of the Products. Defendant made conscious decisions not to redesign, re-label, warn or inform the unsuspecting public, including Plaintiff and the other Class Members.

130. Defendant further made the decision to issue the insufficient and inadequate Recall, as described above.

131. As a direct and proximate result of Defendant's wrongful acts and omissions in placing the defective Products into the stream of commerce without adequate warnings of the risks of serious injury, Plaintiff and the other Class Members were damaged.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the Class;

2. Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

3. Awarding damages and interest;

4. For restitution and disgorgement of profits;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts;

6. For injunctive relief; and

7. Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all issues.

Dated: June 8, 2026

Respectfully submitted,

Liberty Edwards Lindstrom Esq.
Attorney for